## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) MATTHEW R. VIANES** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 15-cv-00308-CVE-PJC** |
| | ) | **[District Court in and for Tulsa** |
| **(1) TULSA EDUCARE, INC.,** | ) | **County, Oklahoma** |
| **a Domestic Not for Profit Corporation** | ) | **Case No. CJ-2015-01721]** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .............................................................................................ii

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ....................................................... 1

I.    Statement of Undisputed Facts ........................................................................... 1

ARGUMENT AND AUTHORITIES ................................................................................ 13

   A.    General Applicable Law ................................................................................ 13

   B.    First Claim for Relief - Discrimination Based on Gender (Title VII) – [Reverse Gender

   Discrimination] ................................................................................................ 14

      1.  Applicable Law ......................................................................................... 14

      2.  Application of Law to the Facts ................................................................ 16

   C.    Third Claim For Relief - Disparate Treatment and Termination on the Basis of Age in

   Violation of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 621 et seq.) ..... 17

      1.  Applicable Law ......................................................................................... 17

      2.  Application of Law to the Facts ................................................................ 18

      1.  Applicable Law ......................................................................................... 21

      2.  Application of Law to the Facts ................................................................ 22

   E.    Fifth Claim For Relief - Intentional Infliction of Emotional Distress [Tort of Outrage]23

      1.  Applicable Law ......................................................................................... 23

      2.  Application of Law to the Facts ................................................................ 24

CONCLUSION AND PRAYER FOR RELIEF ........................................................................ 25

# TABLE OF AUTHORITIES

Cases

Adamson v. Multi Cmty. Diversified Servs., Inc.,
    514 F.3d 1136 (10th Cir. 2008).................................................................................15

Ballandby v. Belger Cartage Serv., Inc.,
    2011 WL 2982480 (N.D. Okla. July 22, 2011)...........................................................21

Barley v. Wal-Mart Stores E., LP,
    2008 WL 1732945 (N.D. Okla. Apr. 10, 2008) ..........................................................14

Barnes v. Oddicental Petroleum Corp.,
    761 F. Supp. 2d 1285 (N.D. Okla. 2010) ..............................................................16, 20

Bolin v. Okl. Conf. of the United Methodist Church,
    397 F.Supp.2d 1293 (N.D. Okla., 2005) ....................................................................23

Braun v. St. Pius X,
    509 F. App'x 750 (10th Cir. 2013) .............................................................................20

Breeden v. League Services Corp.,
    575 P.2d 1374 (Okla. 1978) .......................................................................................23

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)....................................................................................................13

Doyle v. Nordam Grp., Inc.,
    2010 WL 5141274 (N.D. Okla. Dec. 13, 2010) .........................................................18

Fisher v. Sw. Bell Tel. Co.,
    2009 WL 936712 (N.D. Okla. Apr. 6, 2009) ..............................................................15

Franks v. Nimmo,
    796 F.2d 1230 (10th Cir.1986)..............................................................................22, 23

Gabler v. Holder & Smith, Inc.,
    2000 OK CIV APP 107, 11 P.3d 1269.........................................................................23

Hinds v. Sprint/United Mgmt. Co.,
    523 F.3d 1187 (10th Cir. 2008)...................................................................................21

Hutchins v. Cessna Aircraft Co.,
    589 F. App'x 874 (10th Cir. 2014) .............................................................................20

Johnson v. Weld Cnty., Colo.,
    594 F.3d 1202 .............................................................................................................21

Konzak v. Wells Fargo Bank, N.A.,
    492 F. App'x 906 (10th Cir. 2012)........................................................................17, 20

Lewis v. Twenty-First Century Bean Processing,
    2016 WL 66334 (10th Cir. Jan. 6, 2016) ....................................................................19

McClelland v. CommunityCare HMO, Inc.,
    2012 WL 681455 (N.D. Okla. Feb. 29, 2012) ............................................................22

Montes v. Vail Clinic, Inc.,
    497 F.3d 1160 (10th Cir. 2007)...................................................................................16

Notari v. Denver Water Dep't,
    971 F.2d 585 (10th Cir. 1992)...............................................................................14, 15

Petersen,
    301 F.3d .....................................................................................................................21

Polk v. TEKsystems, Inc.,
    2014 WL 1303606 (N.D. Okla. Mar. 28, 2014)....................................................13, 23

Schovanec v. Archdiocese of Oklahoma City,
    2008 OK 70, 188 P.3d 158..........................................................................................23

Seeber v. Williams Companies, Inc.,

2006 WL 2524249 (N.D. Okla. Aug. 28, 2006) ....................................................................21

Selenke v. Med. Imaging of Colorado,
  248 F.3d 1249 (10th Cir. 2001)...............................................................................................14

Steven W. Russell v. PHILLIPS 66 COMPANY,
  2016 WL 1651820 (N.D. Okla. Apr. 25, 2016) ......................................................................23

*Trentadue v. United States,*
  397 F.3d 840 (10th Cir. 2005) (applying Oklahoma law)........................................................23

Tucker v. Franciscan Villa, Inc.,
  2007 WL 2703194 (N.D. Okla. Sept. 17, 2007) .............................................................15, 22

*Univ. of Texas Sw. Med. Ctr. v. Nassar,*
  133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013) ............................................................................22

*Velazquez v. Helmerich & Payne Int'l Drilling Co.,*
  2016 WL 379248 (N.D. Okla. Jan. 29, 2016) ........................................................................23

Wheeler v. Spirit Aerosystems, Inc.,
  2015 WL 161292 (N.D. Okla. Jan. 13, 2015) ........................................................................15

Statutes
 HYPERLINK \l..................................................................................................................1, 17, 21

Rules
Fed. R. Civ. P. 26(a)(1)(A)(iii) .................................................................................................25
Fed. R. Civ. P. 56(e) ..................................................................................................................13

Regulations
45 C.F.R § 1301 ...........................................................................................................................1

Other Authorities
Restatement Second of Torts, § 46 ............................................................................................23

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Tulsa Educare, Inc. (hereinafter "Educare" or "Defendant"), hereby moves this Court to grant summary adjudication in its favor with respect to the three claims alleged by Plaintiff, Matthew Vianes ("Vianes"). This dispute is bottomed upon Educare's termination of the employment of Family Advocate Vianes for failure to perform his duties as a family advocate, a position which is part and parcel of HeadStart and subject to Performance Standards at 45 C.F.R § 1301 et seq.   The Motion should be granted for each of the separate and independent grounds set forth in the detailed sections below for each of Plaintiff's respective claims:

    (i)      Discrimination Based on Gender (Title VII) – [Reverse Gender Discrimination];

    (ii)     Retaliation in Violation of Title VII;

    (iii)    Disparate Treatment and Termination on the Basis of Age in Violation of the Age Discrimination in Employment Act of 1967 (29 U.S.C.A. § 621 et seq.);

    (iv)   Retaliation in Violation of the Age Discrimination in Employment Act of 1967 (29 U.S.C.A. § 621 et seq.); and

    (v)     Intentional Infliction of Emotional Distress [Tort of Outrage].

### I.    Statement of Undisputed Facts

1.    Tulsa Educare Inc. ("Educare"), an Oklahoma domestic not for profit corporation (charitable organization).

2.    Educare is a research based program with a foundation in the best of early childhood practices that ensure school readiness of children most at risk for school failure. It is an innovative partnership between the private sector, Head Start/Early Head Start, Tulsa Public School officials and community partners dedicated to narrowing the achievement gap for children in their communities.  Educare rigorously evaluates its programs to collect information that Educare can use to improve its models. Therefore documentation of information, services provided, and outcomes is required.  http://www.tulsaeducare.org/.

3.      Unbeknownst to Educare until third party discovery, Vianes received Needs Improvement Ratings or Does Not Meet Ratings from the Oklahoma Department of Human Services in the following critical categories:    Overall Accountability (2006-06-30), Customer Service Orientation (2006-06-30); Intake/Application Processing (2005-06-30) (noting:   Some cases are having to be returned more than once, for either clarification and errors. The worker needs to proofread all cases prior to second party review); Case Maintenance (2005-06-30); Intake/Application Processing (2004-06-30).   Exs. 1, 2, and 3.

4.      Unbeknownst to Educare until third party discovery, Vianes resigned from his employment with the Oklahoma Department of Human Services after receiving a written reprimand and within a probationary period for unsatisfactory performance, misconduct, and willful disobedience, noting in part delinquent reviews by Plaintiff Vianes.   Exs. 4 and 5 (2006-08-31 DHS Written Reprimand and 2006-10-26 DHS Email Resignation of Vianes).

5.      Plaintiff "resigned from DHS because of the workload and constantly getting written up for stuff…".  Ex. 6 (Vianes at 269).

6.      In the process of applying to Educare in May of 2012, Plaintiff misrepresented to Educare that:

> "I was employed [at the Oklahoma Department of Human Services for] seven years and in that time I was assigned the SSICDP Program as a case manager with a case load of over five hundred.    Knowledge of child development, communication resources, working daily with other agencies, vendors, the child and their families ensured 100% accurate and timely compliance with State and Federal Status was required and I consistently [met] through my tenure."

Ex. 7 (2012-04-29 Letter of Plaintiff) and Ex. 8 (Plaintiff's Resume) (emphasis added).

7.      Vianes was male of sixty-five years of age at the time of the interview for the family advocate position at Educare.   Ex. 6 (Vianes at 47).

8.      Vianes was interviewed by Elizabeth Miranda (Educare Assistant Site Director) and

Becky Mason (Educare Master Teacher) for a position as a family advocate. Ex. 9 (Interview Notes of Miranda); Ex. 10 (Interview Notes of Mason).

9.      Miranda and Mason, separately and independently, recommended Plaintiff for employment as a family advocate. Ex. 9 (Interview Notes of Miranda); Ex. 10 (Interview Notes of Mason).

10.      Mason and Miranda recommended Plaintiff for employment based upon Plaintiff's representations. Ex. 11 Mason at 84;   Ex. 9 (Notes of Miranda) (explaining recommendations based upon representations: (i) "has experience with social services" and (ii) "worked in DHS for 7 years").

11.      Vianes was employed as a family advocate at Educare - Kendal Whittier from May 23, 2012 until December 20, 2013.  Ex. 12, Vianes Offer Letter; Ex. 13, 2013-12-20 Employee Counseling/Disciplinary Action Report.

12.      Vianes was first supervised at Educare by Master Teacher, Mason, starting in May 23, 2012.  Ex. 6 (Vianes at 40).

13.      Vianes acknowledged his job summary on June 12, 2012.    Vianes job summary reflects that Plaintiff was to:

> Provide comprehensive parent education/training, family engagement activities, advocacy, case management, development of Family Partnership Agreement, parent involvement, transition activities, linkage and referrals for early interventions needs as well as social service requests.   Work collaboratively with Bounce Learning Network (BLN) and other community partners to ensure BLN requirement, NAEYC Criteria and Head Start Performance Standards are met.

Ex. 14 (2012-06-12 Job Summary at Educare-000048 to Educare-000049).

14.      Plaintiff explained the duties of a family advocate as follows:

Wide range. It entailed from the time a prospective parent and child would walk in the building until the time they left, and the idea was to – for them to take a part of the school, of the theories and practices as much as they could home with them, to continue the practice and then confessor

or advisor, call it as you may, for the parents if they had a situation develop, albeit financial, domestic. If we noticed something awry with the child, not properly dressed or not clean or whatever, all these things, we, as a family advocate, <u>were in charge of noting and commenting and investigating and reporting and following up on, providing positive solutions to</u>, as well as having a -- which is my favorite part, having a -- just a -- not enough, but a whole lot of contact with the kids all day long. Ex. 6 (Vianes at 29-30) (emphasis added).

15.    Plaintiff was responsible for documenting children's records on a computer program (Child Plus) and in paper files.  Ex. 6 (Vianes at 35-36).

16.    Plaintiff was responsible for completing Family Partnership Agreement Service Plan [also known as FPAs or Family Participation Agreements or Family Partnership Agreements]. Ex. 6 (Vianes at 37-38); Ex. 15 (Sample FPA).

17.    Mason provided training to Vianes.  Ex. 11 (Mason at 22-25, 47-48, 52).

18.    Vianes was shown physical child social services files in the classrooms for which Vianes was responsible by Master Teacher Mason.  Ex. 6 (Mason at 24-25).

19.    At the front of each physical (paper) child file, there was a sign in sheet upon which the signature of the family advocate, Vianes, was required to appear for each date of access.  Ex. 6 (Vianes at 71, 72).

20.    The FPA form was to reside in the child's physical (paper) social services file.    Ex. 6 (Vianes at 37).

21.    A form called a Family Engagement Interest Survey was to reside in the child's physical (paper) social services file. Ex. 6 (Vianes at 346).

22.    Miranda provided training for family advocates at Educare.    Ex. 6 (Vianes at 53-54).

23.    Vianes received training at least two mass training events.   Ex. 6 (Vianes at 54).

24.    Vianes admits other training as follows:   "We had meetings sometimes as often as once a week, and I don't know if she [Miranda] called that training or a meeting. We were told

meetings, and in the meetings, different things were discussed regarding policies and procedures." Ex. 6 (Vianes at 56).

25.     On August 7, 2012, Educare (Master Teacher Mason) provided written forms and instructions to Vianes.   Ex. 16 (Vianes Deposition Ex. 9); Ex. 6 (Vianes at 161-162, 162-181).

26.     The forms and instructions provided to Vianes on August 7, 2012 included in particular part: instructions for procedures for the FPA (Educare-000226-Educare-000230);  Guidelines for Practice (Vianes at 166-167; Educare-000181; Family Contact Tracking Sheet (Vianes at 171-172; Educare-000191); Instructions as to use of Child Plus (Vianes at 173-174; Educare-000195-000198); Instructions As To How To Complete A Service Plan (Vianes at 175-176; Educare-000203), Family Re-Assessment Procedures (Vianes at 180-181; Educare-000256).   Ex. 16 (Vianes Deposition Ex. 9); Ex. 6 (Vianes at 161-162, 162-181).

27.     Vianes testified that the Instructions for FPA's (Educare-000226 to Educare-000230) were not difficult to understand.   Ex. 6 (Vianes at 180-181).

28.     In September of  2012, Educare (Master Teacher Mason) transmitted to Vianes a My Plan document for employee performance planning which included in part the following goals:

| Goal | Line of Sight & Impact |
|---|---|
| 1. Maintain enrollment at or above 90% andADA at or above 85% on a  monthly average for school year 2012-2013. | Family Engagement is strengthened. Work with families on their understanding on the importanceof their child's attendance. |
| 2. Ensure Family Engagement &Participation; 40% average participation at monthly parent meetings; two parent/child activities a week with at least 50% participation; Engage at least 25% of parents in some aspect of EduCareers. | Implement specific strategies to support parent  career advancement; FPA, GED, ELL, EduCareers, Career Advance etc. Promote  parents' understanding of their impact on their child's development through parenting education;implement specific strategies to support relationship strengthening in and among families. |

Ex. 17 (2012-09-07 Email Transmitting to Vianes My Plan Educare-000393 to Educare-000395;

Ex. 18 (2012-09-28 My Plans executed by Vianes at Educare-000055 to Educare-000057).

29.     On September 11, 2012, Vianes thanked Educare (Miranda) for training as follows: Thank you for the training yesterday. I really feel better about these child plus entries. In just a short time frame you gave me a great deal of information.   Ex. 19 (2012-09-11 Email of Vianes at Educare-0002639).

30.     Mason, Vianes's First Supervisor at Educare, noted that:     [I]n Headstart if it's not written down, it didn't happen" and "if it wasn't documented, it wasn't done".   Ex. 11 (Mason at 60, 89-90).

31.     In November of 2012, Miranda advised Vianes that "Remember if it is not documented in Child Plus[,] it didn't happen".     Ex 20 (Vianes Deposition Ex. 12 - 2012-11-05 Family Advocate Meeting); Ex. 6 (Vianes at 215-216).

32.     On November 12, 2012, Educare engaged Vianes in Individual Reflective Supervision regarding documentation and communication with families and advised Vianes that Family Partnership Agreements (FPA) need to be completed and Parent Interviews need to be completed. Ex. 21 (2012-11-21 Individual Reflective Supervision Educare-000061 to Educare-000062).

33.     In November of 2012, Miranda (Educare) wrote up a list of corrections to the Child Plus files (computer program files) for Vianes to correct.   Ex. 6 (Vianes at 63).

34.     Starting in November of 2012 and after from time to time, Vianes received emails from Miranda (Educare) noting corrections to particular children's files.   Ex. 6 (Vianes at 68).

35.     Educare provided Family Advocate Training on May 31, 2013 which Vianes attended. Ex. 22 (2013-05-31 Family Advocate Professional Development Training at Educare-0002708 to Educare-002719 (Vianes Deposition Ex. 13); Ex. 6 (Vianes at 217-218, 221-222).

36.     Vianes was aware that there was going to be a federal review during the last six or seven

or eight months of 2013 and that there was fear that the Department of Education could give a bad rating which would make grants available to other schools.   Ex. 6 (Vianes at 58-59, 70). *See also,* Ex. 23   (2013-06-14 Email Re Preparation for Federal Review).

37.     On June 14, 2013, Vianes accepted a meeting invitation for a meeting entitled "Preparation for Federal Review for EHS @Tue Jul 2, 2013.   Ex. 23 (2013-06-14 Email Re Preparation for Federal Review).

38.     On June 18, 2013, Educare rated Vianes with a Needs Development Rating for (i) Ensuring Family Engagement and Participation and (ii) Job Knowledge.  Ex. 24 (2013-06-18 Annual Performance Appraisal Educare-000063 to Educare-000066).

39.     On July 1, 2013, Vianes declined the previously accepted "Preparation for Federal Review for EHS @ Tue Jul 2, 2013" meeting. Ex. 25.

40.     The classrooms for which Vianes was primarily responsible in the second half of 2013 were 9 and 11 and 6 and 8.   Ex. 6 (Vianes at 79-80).

41.     On September 5, 2013, Vianes acknowledged receipt of Educare's Employee Handbook. Ex. 26 (Employee Handbook Acknowledgement at Educare-000072).   Educare's grievance procedures are set out in the Handbook at p. 17-18.   Ex. 27 (Excerpt of 2013 Educare Employee Handbook at Educare-000434 to Educare-000435; Educare-000442 to Educare-000444; Educare-000450 to Educare-000451).

42.     On October 1, 2013, Miranda documented that Vianes failed to keep families involved and failed to document (failed to track referrals).   Ex. 28 (Advocate Monthly Report Educare-000073 to Educare-000074).

43.     On October 1, 2013, Miranda informed Vianes by email regarding Vianes' failure to involve families and to document.   Exs. 29 and 30 (Educare-000075 and Educare-000076).

44.   On October 3, 2013, Miranda emailed Vianes regarding Vianes' failure to reply to emails regarding file reviews.   Exs. 31 and 32 (Educare-000077 and Educare-000078).

45.   By October 7, 2013, Miranda requested a sample schedule with documentation time set aside for Vianes.   Ex. 33 (2013-10-07 Email); Ex. 34   (Sample Schedule with handwritten question "documentation time?" at Educare-000078).

46.   On October 7, 2013, Miranda specifically coached Vianes regarding a specific child social services file as follows:

> FPA dates have to match with parent signature date and documentation date
> Child goals need to address the IFSP goal and document under Disabilities
> FPA needs a review date
> Complete the PIR section for the family
> Address all areas of need and document under the appropriate event in BIRP format.
>
> Ex. 33 (2013-10-07 Email at Educare-000079).

47.   On October 14, 2013, Vianes Family Advocate Monthly report reflected Vianes' failure to correctly complete documentation and provided questions and information for follow up.   Ex. 34 (2013-10-14 Family Advocate Monthly Report at Educare-000083 to Educare-000084).

48.   On October 17, 2013, Educare emailed Vianes with expectations as follows:

> Matt, just to recap on today's meeting:
> You will have all your EHS files ready by noon on 10/24/13.
> The plan is to work on 2-3 tiles a day by gathering the family's needs, refer and follow up with the families according to their needs and documenting daily interactions so all files will be cough [caught] up by noon on 10/24/13.

Ex. 35 (Vianes 2013-10-17 Email Chain Today's Meeting at Educare-000085 to Educare-000087).

49.   On October 30, 2016, Miranda reminded Vianes:

>    As stated in my e-mail on the 17th the plan was to work on 2-3 files a day by gathering the family's needs information make referrals and follow up with the

families according to their needs and documenting daily interactions so all files would be cough [caught] up by noon on 10/24/13 to which you agreed…

With the upcoming Federal review it is imperative that you focus on getting the EHS files ready (do file review to gather the family's needs, refer and follow up with the families according to their needs and documenting daily interactions so all family's goals and needs have been addressed) by the end of this Friday 11/1/13.

Ex. 35 (2013-10-17 Email re Today's Meeting at Educare-000085 to Educare-000087)

50.     On November 1, 2013, Educare coached Vianes regarding Vianes' failure to document child absences.   Ex. 36 (2013-11-01 Email at Educare-000088).

51.     On November 4, 2013, Miranda reviewed with Vianes annotated Family Needs Summaries with explanations and corrections which needed to be made to files.   Ex. 37 (Family Needs Summary at Educare-000089 to Educare-000090); Ex. 38 (Family Needs Summary at Educare-000092).

52.     By November 5, 2013, Educare provided Vianes with a Crucial Conversation Memorandum regarding performance failures, failure to meet deadlines in September and October, and noting that corrections for rooms 6 and 8 were due by Friday, November 8, 2013. Ex. 39 (2013-11-04 Crucial Conversation Memorandum at Educare-000095 and Educare-000508).  Vianes acknowledged the November 5, 2013 Crucial Conversation Memorandum.

53.     On November 14, 2013, Educare issued to Vianes an Employee Counseling/Disciplinary Action Report regarding job performance failures and failure to meet family participation goals per HeadStart regulations, HSPS 1304.40(a)(2) and Educare Policy (p. 30). Ex. 40 (2013-11-14 Employee Counseling/Disciplinary Action Report – Written Warning). [Doc.002-001 at p. 5 of 9, ¶ 18] (Complaint acknowledging receipt of warning).    The Disciplinary Action Report set certain goals and deadlines and notified Vianes that failure to meet stated goals/deadlines would result in further discipline up to and including termination.

54.     On November 15, 2013, Vianes acknowledged the agenda for a Family Advocate meeting. The agenda provided that Federal Review was set to start on December 15, 2013.  Ex. 41 (Educare 1 Family Advocate Meeting 11/15/13 Agenda Executed by Vianes).

55.     On November 27, 2013, Miranda provided to Vianes a Second Written Warning which again provided specific goals and deadlines and cited performance requirements and HeadStart regulations HSPS 1304.40 (Family Partnerships) which Vianes was failing to meet.   Vianes acknowledged the Second Written Warning.  Ex. 42 (2013-11-27 Employee Counseling – Second Written Warning at Educare-000103 to Educare-000105). [Doc.002-001 at p. 5 of 9, ¶ 19] (Acknowledging receipt of written warning).

56.     On December 4, 2013, Educare issued a Performance Improvement Plan ("PIP") to Vianes for failure to meet HeadStart Requirements, Family Participation Goals, and Documentation of same).   Ex. 43 (2013-12-04 Performance Improvement Plan at Edcuare-000108 to Educare-000110).  [Doc.002-001 at p. 5 of 9, ¶ 20] (Acknowledging receipt of PIP).[1]

57.     The goals set out in the December 4, 2013 Performance Improvement Plan were to have been met by Vianes by December 20, 2013.  Ex. 6 (Vianes at 49).

58.     On December 20, 2013, Educare conducted a file review on child social services files for which Vianes was responsible and deficiencies were noted.  Ex. 44 (2013-12-20 File Review at Educare-000111 to Educare-000112).

59.     On December 20, 2013, after multiple coachings, warnings, and a performance improvement plan for Vianes for failure to achieve family participation and document the same as required, the Educare Site Director and Assistant Site Director, Miranda terminated the employment of Vianes.   Ex. 13 (2013-12-20 Employee Counseling/Disciplinary Action Report

---

[1] Plaintiff has erroneously indicated in Plaintiff's Complaint that the Performance Improvement Plan was issued on December 14, 2013 rather than December 4, 2013.

noting failure to comply with work assignments and citing HeadStart Regulations at Educare-000120 to Educare-000122); Ex. 44 (2013-12-20 File Review at Educare-000111 to Educare-000119).

60.    Vianes failed to utilize Educare's Grievance Procedures.   *See,* Paragraph 42 above.  See also, Ex. 26 (Employee Handbook Acknowledgement at Educare-000072);  Ex. 27 (Excerpt of 2013 Educare Employee Handbook at Educare-000434 to Educare-000435; Educare-000442 to Educare-000444;   Educare-000450 to Educare-000451 [pp. 17-18]);   Ex. 6 (Vianes at 347)(testifying:

> Q.  Do you know whether or not there were grievance procedures for employees at Tulsa Educare evening? A.    Do I know if there's grievance procedures in place?
> Q.  Uh-huh, yes.  A.   I never inquired.
> Q.   Did you ever attempt to utilize any of the grievance -- any grievance procedures -- A. No.

61.    Vianes stated at deposition that his only claim was that Vianes "wasn't properly treated because of being a male".   Vianes cited no other claims at deposition.   Ex. 6 (Vianes at 110-111).

62.    Regarding support for his claim of disparate treatment based upon gender, Vianes testified that Miranda was more congenial toward other female family advocates (Vianes at 135), that it seemed to frustrate Miranda if Vianes asked Miranda something, (Vianes at 135), and that he saw through the glass other female family advocates in Miranda's office taking notes and looking at files, but did not hear the conversations (Vianes at 144-145).    In summary, Vianes testified as follows:

> Q. So other than females meeting behind closed doors with Elizabeth Miranda going through files, documents, and the child files on the computer <u>like you did with Ms. Miranda</u>, and this example of this meeting regarding child care with the situation with another FA's family, how were these females which you can't

identify treated better than you?  A.   I don't have a response for you. (Vianes at 153-155).

63.    Vianes testified as follows regarding gender:

   a.   Q. Did Elizabeth Miranda ever make comments regarding your gender? A.   No. Ex. 6 (Vianes at 84).
   b.   Q.   Did you ever mention to anyone at Educare that anyone made -- anyone at Educare made gender inappropriate comments to you? A.   No.  Ex. 6 (Vianes at 84).

64.    Regarding a claim of discrimination based upon age, Vianes testified as follows:

   a.   Q.   Are you -- are you claiming that you weren't treated properly because of your age?  A.   I can't say that for sure, but definitely because of my gender.  Ex. 6 (Vianes at 111).
   b.   Q.  Did Elizabeth Miranda ever make comments regarding your age?  A.   No. Ex. 6 (Vianes at 84).

65.    Vianes testified as follows in response to questions regarding protected activity:

   a.   Q.   Did you ever complain to anyone at Educare about gender discrimination? A. No, I did not.  Ex. 6 (Vianes at 83-84).
   b.   Q.   Did you ever complain to anyone at Educare about age discrimination?  A. No. Ex. 6 (Vianes 83-84)
   c.   Q.    Did you ever complain to anyone at Educare that anyone made any age inappropriate comments to you?  A.   No. Ex. 6 (Vianes at 83-84).
   d.   Q.      Did you ever mention to anyone at Educare that anyone made any age inappropriate comments to you? A.   No. Ex. 6 (Vianes at 83-84).

66.    Vianes was not aware of any alleged damages other than loss of income, savings and what Vianes considered being deprived of an opportunity to help people in this case.  Ex. 6 (Vianes at 108).

67.    Vianes is not claiming a monetary value to being deprived of the opportunity to try to help people by way of his job at Educare.   Ex. 6 (Vianes at 108).

68.    Plaintiff failed to disclose damages pertaining to intentional infliction of emotional distress.  Ex. 45 (Plaintiff's Disclosures).  Plaintiff refused to respond to discovery regarding damages and/or provided no responsive documents.   Ex. 46 (Plaintiff's Response to

Interrogatory No. 5, 13; No. 16, 17; Document Request No. 9, 10. 11); Ex. 6 (Vianes at 108-110).

69.      Plaintiff sought no treatment from a mental health care provider with respect to Plaintiff's perceived treatment by Educare.  Ex. 6 (Vianes at 266).

70.      Plaintiff who had a history of cardiac disease (history of a quintuple bypass in 2009 long before applying to Educare) only testified that his blood pressure was raised due to working conditions without providing any time period.  Ex. 6 (Vianes at 267-268).

## ARGUMENT AND AUTHORITIES

The facts in this case establish that there is no material fact in dispute and that Defendant, Educare is entitled to summary judgment on each of Vianes' five claims.

### A.  General Applicable Law

Due to the number of claims asserted by Vianes, Defendant sets out in this general section law generally applicable to the claims and sets out claim specific law in each separate section.

This Court outlined the governing rules for determining a motion for summary adjudication in Polk v. TEKsystems, Inc., No. 12-CV-0557-CVE-TLW, 2014 WL 1303606 (N.D. Okla. Mar. 28, 2014) noting in pertinent part  that.

> However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. See, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

> "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Id .* at 327.

The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the non-moving party on an essential element of that party's claim. Although "[t]he burden of showing the absence of a genuine issue of material fact . . . is upon the movant," the nonmovant "'must do more than simply show that there is some metaphysical doubt as to the material facts.'"

"At all times and for all claims, Plaintiff bears the burden of ultimate persuasion on the issue of intentional discrimination." Notari v. Denver Water Dep't, 971 F.2d 585, 591 (10th Cir. 1992).

The Court's "role [with respect to claims of intentional discrimination] is to prevent unlawful … practices, not act as a super personnel department that second guesses employer's business judgments." *Simms v. Oklahoma ex. Rel. Dep't. of Mental Health & Substance Abuse Srvs.*, 165 F. 3d. 1321, 1329 (10th Cir. 1999); Selenke v. Med. Imaging of Colorado, 248 F.3d 1249, 1261 (10th Cir. 2001). *See also,* Barley v. Wal-Mart Stores E., LP, No. 07-CV-0240-CVE-PJC, 2008 WL 1732945, at *10 (N.D. Okla. Apr. 10, 2008) (citing Simms, 165 F.3d 1321

Further, if a party fails to provide information as required by Rule 26(a) or (e), the party is not allowed to use that information to supply evidence on a motion, at a hearing or at a trial, unless the failure was substantially justified or is harmless.   Fed. Rul. Civ. Pro 26, 26(g), 37, 37(c); FRCP Handbook at 799-800, 847, 976-978).

**B. First Claim for Relief - Discrimination Based on Gender (Title VII) – [Reverse Gender Discrimination]**

**1. Applicable Law**

**a. Plaintiff cannot establish that Plaintiff, a male, is a member of a protected class.**

First, Plaintiff, a male, must establish that Plaintiff is in a protected class by way of reverse discrimination.

> [A] Title VII disparate treatment plaintiff who pursues a reverse discrimination claim, and seeks to obtain the benefit of the McDonnell Douglas presumption, must, in lieu of showing that he belongs to a protected group, establish the background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority.

Notari, 971 F.2d at 589.  *See also,* Adamson v. Multi Cmty. Diversified Servs., Inc., 514 F.3d 1136, 1150 (10th Cir. 2008).

Second, assuming arguendo that Plaintiff can establish that defendant Educare is one of those unusual employers who discriminates against the majority, Plaintiff must satisfy the *McDonnell Douglas* burden shifting analysis summarized by this Court as follows:

> To survive summary judgment under Title VII, plaintiff must satisfy the *McDonnell Douglas* burden shifting analysis. Initially, plaintiff must establish a prima facie case of employment discrimination. Once plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. If defendant makes this showing, the burden shifts back to plaintiff to show that defendant's stated nondiscriminatory reason is mere pretext for unlawful discrimination.

Tucker v. Franciscan Villa, Inc., No. 06-CV-0312-CVE-FHM, 2007 WL 2703194 (N.D. Okla. Sept. 17, 2007) (internal citations omitted).

> The defendant's burden is merely to articulate some proof [of a] facially nondiscriminatory reason for the [action]; the defendant does not at his stage of the proceeding need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a non-discriminatory faction.

Wheeler v. Spirit Aerosystems, Inc., No. 13-CV-0421-CVE-TLW, 2015 WL 161292 (N.D. Okla. Jan. 13, 2015), as corrected (Jan. 20, 2015) (internal citation omitted).

> A plaintiff [then] demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence… A plaintiff's "mere conjecture" that the employer's explanation is pretext is not a sufficient basis to deny a motion for summary judgment.

Fisher v. Sw. Bell Tel. Co., No. 07-CV-0433-CVE-FHM, 2009 WL 936712, at *10-11 (N.D. Okla. Apr. 6, 2009), aff'd, 361 F. App'x 974 (10th Cir. 2010), and aff'd, 361 F. App'x 974 (10th Cir. 2010).

### 2. Application of Law to the Facts

**a. Plaintiff cannot establish that Educare intentionally discriminated against Vianes based upon reverse discrimination and therefore cannot establish a prima facie case of alleged discrimination in violation of Title VII.**

First, there is no evidence that Educare is that unusual employer who discriminates against the majority.

Second, Vianes has presented no evidence of disparate treatment. Vianes has no viable personal knowledge of and can present no evidence establishing that similarly situated employees received a better level of one-on-one training. Vianes' only beleaguered support for his disparate treatment claim is that Vianes saw, but did not hear, other family advocates in Miranda's office reviewing papers and looking at the computer, <u>as did Vianes</u> with Miranda. Facts at ¶¶ 62. Further, Vianes was provided training, coachings, and warnings and given a performance improvement plans as set forth above. Vianes still failed to meet expectations. Facts at ¶¶ 14-59.

**b. Educare had a legitimate business reason for terminating Vianes for failure to engage families in participation and to document according to Educare and Head Start Standards.**

Assuming arguendo that Vianes could establish a prima facie case of discrimination, Educare bears only an "exceedingly light burden" of showing that Educare terminated Vianes for legitimate business reasons. <u>Barnes v. Oddicental Petroleum Corp.</u>, 761 F. Supp. 2d 1285, 1292 (N.D. Okla. 2010) (quoting <u>Montes v. Vail Clinic, Inc.</u>, 497 F.3d 1160, 1173 (10th Cir. 2007).

Vianes misrepresented his employment history and skills to Educare in the application process. Facts at ¶ 3-6. Vianes had a documented history of performance failures at Educare related to Plaintiff's recognized duties as a family advocate, a position and duties which are subject to HeadStart Regulations and related documentation at Educare. Facts at ¶¶ 36, 37, 39, 49, 54. Educare was facing a Federal Review in the fall of 2013. Problems related to the

Federal Review could have jeopardized grants to Educare.   Facts at ¶¶ 36, 27, 39, 49, 54. Vianes was trained, coached, warned, provided with a crucial conversation memorandum, and a performance improvement plan.   Vianes files were still not up to par by December 20, 2013 when Vianes was terminated.   Facts at ¶¶ 59-60.

> **c. Plaintiff cannot establish pretext for Educare's termination of Vianes in December of 2013.**

Plaintiff has simply presented no evidence of pretext in this case.   Nor can Plaintiff as Plaintiff has presented no facts regarding similarly situated family advocates in discovery.

Vianes represented (actually misrepresented) to Educare that Vianes came to Educare with a skill set in social services case management separating Vianes from any potential comparators.   Facts at ¶¶ 3-6. Vianes has no viable personal knowledge of and can present no evidence establishing that similarly situated employees received a better level of training. Vianes' only beleaguered support for his disparate treatment is that Vianes saw, but did not hear, other family advocates in Miranda's office reviewing papers and looking at the computer, <u>as did Vianes</u> with Miranda.   Facts at ¶¶ 62.   Further, regardless of training provided to Vianes, Vianes continued to not perform his duties and have errors in his files.   Facts at ¶¶ 14-59.

Vianes' mere conjecture is simply not enough to establish pretext to survive summary judgment.

> **C. Third Claim For Relief - Disparate Treatment and Termination on the Basis of Age in Violation of the Age Discrimination in Employment Act of 1967 (29 U.S.C.A. § 621 et seq.)**
>
> **1. Applicable Law**

"The ADEA requires 'but-for' causation; there, [Plaintiff] claiming age discrimination must establish by a preponderance of the evidence that [the] employer would not have taken the challenged action [terminated for failure to perform his family advocate duties per Educare

policy and HeadStart regulations], but for [Plaintiff's] age." <u>Konzak v. Wells Fargo Bank, N.A.,</u> 492 F. App'x 906 (10th Cir. 2012); <u>Doyle v. Nordam Grp., Inc.,</u> No. 09-CV-531-TCK-FHM, 2010 WL 5141274, at *2 (N.D. Okla. Dec. 13, 2010), <u>aff'd,</u> 492 F. App'x 846 (10th Cir. 2012).

    **2. Application of Law to the Facts**

For each of the separate reasons set out below, the Vianes ADEA claim must be dismissed.

    **a. Vianes Has No Knowledge of a Claim and/or Facts Supporting a Claim of Age Discrimination.**

Further, as set forth in the facts at ¶ 61, Vianes stated at deposition that his only claim was that Vianes "wasn't properly treated because of being a male".   Vianes cited no other claims at deposition.  Ex. 6 (Vianes at 110-111).   Vianes himself can't say for sure that Vianes wasn't treated properly based upon his age.   Ex. 6 (Vianes at *); Facts at ¶ 64.

    **b. Vianes Has Failed to Establish a Prima Facie Case of Age Discrimination.**

Assuming arguendo that Plaintiff's recitation of Plaintiff's own claims (excluding all claims except reverse gender discrimination) is not fatal to Plaintiff's remaining claims including a claim of intentional age discrimination, under the facts set forth above, Vianes cannot establish each of the essential requirements for a prima facie case of intentional age discrimination:  (i) that Plaintiff was satisfactorily performing his job and (ii) that but-for Plaintiff's age, Defendant would not have terminated his employment.

First, the undisputed evidence establishes that Plaintiff was not satisfactorily performing Vianes' job.  Facts at ¶¶ 14-59 (including but not limited to coachings, written warnings, an acknowledged November 5, 2013 Crucial Conversation Memorandum, an acknowledged written warning on November 14, 2013, an acknowledged second written warning on November 27,

2013, and a December 5, 2013 Performance Improvement Plan with goals which were not met upon the date of termination of Vianes' employment).

A lengthy period of unsatisfactory work performance caused Defendant to terminate the employment of Vianes. *See*, <u>Lewis v. Twenty-First Century Bean Processing</u>, No. 15-3188, 2016 WL 66334, at *2 (10th Cir. Jan. 6, 2016) (affirming summary judgment that ADEA plaintiff failed to establish prima facie case when Plaintiff failed to provide evidence that his work was satisfactory).

Further, there is no evidence that Vianes was treated less favorably than others outside of the respective protected class (over forty).

**2. Educare Had a Legitimate Business Reason to Discipline and Terminate Vianes.**

Educare has met the burden of production showing that Educare terminated Vianes for legitimate business reasons. As set forth above, Vianes both misrepresented his employment history and skills to Educare in the application process and had a documented history of performance failures related to Plaintiff's recognized duties as a family advocate, a position and duties which are subjected to HeadStart Regulations at Educare. Facts at ¶¶ 14-59.

In the case of *Doyle v. Nordam Grp., Inc.*, where an employee was passed over for promotion, rather than terminated, the Tenth Circuit Court noted that: [] the fact that [the Plaintiff's] performance problems predate the controller vacancy undermine[d] any inference the negative reviews were age based and not an accurate reflection of his performance. <u>Doyle v. Nordam Grp., Inc.</u>, 492 F. App'x 846, 851 (10th Cir. 2012). Similarly in this case, Vianes had been coached, warned, and disciplined before the Plaintiff was terminated negating any inference that Plaintiff Vianes was terminated only because of Vianes' age. In fact, Vianes' history at

DHS establishes that Plaintiff has had a long history of failure to handle case files, proofread, and make corrections.  Facts at ¶¶ 3-6.

### 3.   Vianes Cannot Establish Pretext

Finally, Vianes cannot raise a material fact that Educare used Vianes' failure to meet performance expectations for a family advocate as a pretext for disciplining and/or terminating Vianes.    As discussed in Section * regarding reverse gender discrimination, Educare legitimately terminated Vianes after multiple attempts to train, coach, and discipline Vianes regarding his failures to meet Educare and Headstart Standards.   Facts at ¶¶ 14-59.  At the time, Educare was, as admitted by Vianes preparing for and facing a Federal Review which could jeopardize grant funding.   Facts at ¶¶ 36, 37, 39, 49, 54.

As the United States Court of Appeals for the Tenth Circuit put it in reviewing an ADEA claim under the pre-text prong of the McDonnell Douglas analysis: "We do not ask whether the employer's reasons were wise, fair or correct; the relevant inquiry is whether the employer honestly believed its reasons and acted in good faith upon them."  *Konzak v. Wells Fargo Bank, N.A.*, 492 F. App'x 906 (10th Cir. 2012); *Barnes v. Occidental Petroleum Corp.,* 761 F.Supp.2d 1285, 1292 (N.D. Okla. 2010).    As the Court notes, "the reason given was pretextual only if [the Plaintiff] shows that age discrimination provided a more likely explanation or that [the Defendant's] explanation was not credible."  *Hutchins v. Cessna Aircraft Co.,* 589 F. App'x 874, 876 (10th Cir. 2014).  Thus "evidence of pretext defeats summary judgment only if it could reasonably lead the trier of fact to infer a discriminatory motive." *Braun v. St. Pius X Par.*, 509 F. App'x 750, 754 (10th Cir. 2013) (internal citation omitted).

Vianes' ADEA claim fails because Vianes cannot meet the ADEA's "but-for" burden. The undisputed evidence as set forth above shows that the Defendant was merely implementing

its expectations for proper documentation of parent involvement as required by Educare and to meet regulations (HeadStart), particularly in the face of a Federal Review.

Vianes has no evidence to suggest that the decision to terminate Vianes for failure to properly document files to Educare's standards and compliance with regulations was a pre-text for age discrimination.

**D. Retaliation:   Second Claim for Relief - Retaliation in Violation of Title VII <u>and</u> Fourth Claim For Relief - Retaliation in Violation of the Age Discrimination in Employment Act of 1967 (29 U.S.C.A. § 621 et seq.)**

Defendant addresses Vianes' claims of retaliation under Title VII and the ADEA in tandem as there are simply no facts to support Plaintiff's claims and both claims require "but-for" causation which is insurmountable in this case.

**1.  Applicable Law**

 "To establish a prima facie case of retaliation under Title VII [or the ADEA], a plaintiff must show that (1) [Plaintiff] engaged in protected opposition to discrimination; (2) [Plaintiff] suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between [Plaintiff's] opposition and the employer's adverse action." *Johnson v. Weld Cnty., Colo.,* 594 F.3d 1202, 1215P (10th Cir. 2010) (internal quotation marks omitted).

This Court has noted that "The Tenth Circuit has stated that:

> Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII and/or the ADEA as applicable]. General complaints about company management . . . will not suffice.
>
> *Hinds v. Sprint/United Mgmt. Co.,* 523 F.3d 1187, 1203 (10th Cir. 2008); *see also* Petersen, 301 F.3d at 1188 (the employee's complaints must give adequate notice to the employer that the employee is complaining of conduct prohibited by Title VII).

*Ballandby v. Belger Cartage Serv., Inc.,* No. 10-CV-0339-CVE-FHM, 2011 WL 2982480, at *9-

10 (N.D. Okla. July 22, 2011); *Seeber v. Williams Companies, Inc.,* No. 04-CV-0451-CVE-PJC, 2006 WL 2524249, at *16 (N.D. Okla. Aug. 28, 2006).

Retaliation claims must be proved according to traditional principles of but-for causation pursuant to Title VII and to the ADEA. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013).

### 2. Application of Law to the Facts

In this case, Plaintiff cannot present facts supporting the allegation that Plaintiff engaged in protected opposition to discrimination. Nor can Plaintiff. As set forth above, Plaintiff never complained to anyone at Educare of prohibited discrimination. Facts at ¶ 41, 60, 65). Although grievance procedures were provided to and acknowledged by Plaintiff, Plaintiff never even inquired regarding grievance procedures. Facts at ¶¶ 41, 60, 65.

Further, Educare terminated the employment of Vianes for a history of performance failures in the face of a Federal Review which could have jeopardized grants to Educare. *See,* Facts at ¶¶ 36, 37, 39, 49, 54. There is simply no causal connection between the termination for failure to engage families and to document pursuant to Educare standards and Head Start regulations and any potential allegation of protected activity (which at this point in the litigation what would be a fictitious and/or sham and/or both).[2] *See,* Facts at ¶¶ 14-59. Nor can Vianes establish that "but for" either Vianes' male gender (under the standards for reverse discrimination) or Vianes' age (a year and a half older than when hired at age 65), that Educare would not have terminated Vianes.

---

[2] For a discussion of sham fact issues, see: Tucker v. Franciscan Villa, Inc., No. 06-CV-0312-CVE-FHM, 2007 WL 2703194, at *5-6 (N.D. Okla. Sept. 17, 2007) and McClelland v. CommunityCare HMO, Inc., No. 11-CV-0157-CVE-TLW, 2012 WL 681455, at *5-6 (N.D. Okla. Feb. 29, 2012), aff'd, 503 F. App'x 655 (10th Cir. 2012) (both citing *Franks v. Nimmo,* 796 F.2d 1230 (10th Cir.1986)).

Therefore, Plaintiff's retaliation claims should be summarily dismissed.

**E.  Fifth Claim For Relief - Intentional Infliction of Emotional Distress [Tort of Outrage]**

**1.  Applicable Law**

This Court recently examined a claim for intentional infliction of emotional distress and enumerated the elements and burdens as follows:

> The action is governed by the narrow standards laid out in the Restatement Second of Torts, § 46. Id. In Breeden v. League Services Corp., 575 P.2d 1374 (Okla. 1978), the Oklahoma Supreme Court explained:
>
> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Id. at 1376. To state a claim, a plaintiff must allege that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." Schovanec v. Archdiocese of Oklahoma City, 2008 OK 70, 188 P.3d 158, 175, as corrected (July 2, 2008) (quoting Computer Publications, Inc. v. Welton, 49 P.3d 732, 735 (Okla. 2002)). Under Oklahoma law, the trial court must assume a "gatekeeper role" and make an initial determination that the defendant's conduct "may be reasonably regarded as sufficiently extreme and outrageous to meet the Restatement § 46 standards." Trentadue v. United States, 397 F.3d 840, 856 n.7 (10th Cir. 2005) (applying Oklahoma law).

Steven W. Russell v. PHILLIPS 66 COMPANY, No. 15-CV-0087-CVE-PJC, 2016 WL 1651820, at *9-10 (N.D. Okla. Apr. 25, 2016) (granting summary judgment to Defendant employer).   See also: Velazquez v. Helmerich & Payne Int'l Drilling Co., No. 15-CV-0017-CVE-TLW, 2016 WL 379248, at *11-13 (N.D. Okla. Jan. 29, 2016) and Polk v. TEKsystems, Inc., No. 12-CV-0557-CVE-TLW, 2014 WL 1303606, at *10 (N.D. Okla. Mar. 28, 2014) (citing Gabler v. Holder & Smith, Inc., 2000 OK CIV APP 107, 11 P.3d 1269 and noting that even

workplace harassment (which is <u>not</u> a claim in this case) rarely rises to the level of extreme and outrageous conduct) and granting summary judgment to the employer); *Bolin v. Okl. Conf. of the United Methodist Church*, 397 F.Supp.2d 1293 (N.D. Okla., 2005) (noting high standard for actionable conduct in employment litigation and that Oklahoma courts have examined a variety of conduct claimed to be outrageous in the employment context, setting a very high standard for actionable conduct.). *See also*; *Wright v. Jenks Pub. Sch.* (N.D. Okla., 2015) and *Hernoe v. Lone Star Indus., Inc.* (N.D. Okla., 2012) (granting motions to dismiss).  See also, OUJI 20.1.

Further, if a party fails to provide information as required by Rule 26(a) or (e), the party is not allowed to use that information to supply evidence on a motion, at a hearing or at a trial, unless the failure was substantially justified or is harmless.   Fed. Rul. Civ. Pro 26, 26(g), 37, 37(c); FRCP Handbook at 799-800, 847, 976-978).

### 2.  Application of Law to the Facts

In this case, Vianes has only alleged disparate treatment in discipline and termination. [Doc. 002-001 at pp. 3-9] (Removed Complaint (f/k/a Petition). Vianes has neither pled nor otherwise asserted even a harassment/hostile work environment claim.

Vianes stated at deposition that his only claim was that Plaintiff "wasn't properly treated because of being a male".   Plaintiff cited no other claims at deposition.   Facts at ¶ 61.  Viane's only beleaguered support for disparate treatment is that Vianes saw, but did not hear, other female family advocates in Miranda's office reviewing papers and looking at the computer, <u>as did Vianes</u> with Miranda.   Facts at ¶¶ 61-62.   Clearly such beleaguered support does not rise to the high level of actionable conduct required by Oklahoma law.   *See, infra, <u>Bolin.</u>*

Plaintiff was not aware of any alleged damages other than loss of income, savings and what Plaintiff considered being deprived of an opportunity to help people in this case.   Ex. 6 (Vianes at 108).  Plaintiff is not claiming a monetary value to being deprived of the opportunity

to try to help people by way of his job at Educare.    Ex. 6 (Vianes at 108).

Vianes did not disclose damages pertaining to intentional infliction of emotional distress. Facts at ¶¶ 66-68.   Therefore, Vianes is prohibited from using such evidence.  Fed. Rul. Civ. Pro 26, 26(g), 37, 37(c); FRCP Handbook at 799-800, 847, 976-978). Vianes can present no substantial justification for Vianes' failure to respond to discovery requests.[3]

Plaintiff has presented no evidence of severe emotional distress.  Ex. 6 (Vianes at 266, 267-268); Facts at ¶¶ 66-68.

Vianes has presented no facts supporting the required outrageous and intentional conduct and no facts supporting a claim of severe emotional distress.  Nor can Vianes, particularly in the face of Educare policies and HeadStart regulations. Therefore, Vianes claim of intentional infliction of emotional distress should be summarily dismissed.

## CONCLUSION AND PRAYER FOR RELIEF

There is no question that Plaintiff has presented no facts establishing intentional disparate treatment based upon gender or age (that Vianes would not have been terminated but-for his age) and/or engaged in protective activity as is required for Vianes' claims of retaliation and/or established that Educare's conduct was extreme and outrageous or that Vianes suffered emotional distress as is required.

Educare requests that this Court grant summary judgment in its favor and dismiss each and every of Plaintiff's claims and the litigation pursued by Vianes.

---

[3] Rule 26(a)(1)(A)(iii) mandates that a plaintiff automatically submit its damage calculations showing how it arrived at whatever figure it seeks or, alternatively, demonstrate the categories of damages. [Plaintiff] also must produce the non-privileged documents supporting that computation, including documents bearing on the nature and extent of injuries suffered. Fed. R. Civ. P. 26(a)(1)(A)(iii).   However, at this late date, after three scheduling orders [Doc. 010]; [Doc 013]; and [Doc. 022]) and this motion, any submission by Vianes would be a sham.  *See,* Fn. 2 infra.

RESPECTFULLY SUBMITTED:

/s/ Erica Anne Dorwart
Erica Anne Dorwart, OBA No. 18367
FREDERIC DORWART, LAWYERS
Old City Hall
124 East Fourth Street
Tulsa, Oklahoma 74103-5010
(918) 583-9922 - Office
(918) 583-8251 - Facsimile
**Email:** edorwart@fdlaw.com

## **CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on the 20th day of May 2016, the undersigned electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF Registrant(s):

Daniel E. Smolen
Lauren Lambright
David Bross
701 South Cincinnati Avenue
Tulsa, OK  74119
918-585-2667 (telephone)
918-585-2669 (fax)
danielsmolen@ssrok.com
Laurenlambright@ssrok.com
davidbross@ssrok.com


/s/ Erica Anne Dorwart
Erica Anne Dorwart